UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DALLAS L. JACOBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01741-SEB-MJD |
| ) | |
| CAROLYN W. COLVIN Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Dallas L. Jacobs ("Jacobs") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA").  See 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3).  For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

**I. Background**

Jacobs filed his applications for DIB and SSI on February 5, 2008 alleging November 26, 2007 as the onset date of his disability.  [R. at 140 (SSI), 144 (DIB).]  In his disability report filed in conjunction with his applications, Jacobs reported that his disabling impairments are his "Back/meniscus tear left leg."  [R. at 192.]  Jacobs's applications were denied initially on April 4, 2008 and upon reconsideration on May 12, 2008.  [R. at 57-60.]  Jacobs timely requested a hearing on his applications, which was held before Administrative Law Judge Michael Scurry ("ALJ Scurry") by video teleconference on July 21, 2010.  [R. at 9.]

1

ALJ Scurry issued a decision on August 5, 2010 denying Jacobs's applications for DIB and SSI on the basis that, because Jacobs started his own trucking business in September of 2008, there was no twelve-month period during which Jacobs was unable to perform substantial gainful activity (SGA). [R. at 14.] On June 14, 2011, the Appeals Council denied Jacobs's request for review, so Jacobs appealed the matter to the District Court. [Dkt. 17 at 1.] On appeal, the District Court found that the ALJ's decision—that Jacobs's work in 2008 rose to the level of SGA—was not supported by substantial evidence, and remanded the matter for further proceedings consistent with the District Court's order. [1:11-cv-01088-DML-WTL Dkt. 25.]

On remand, the matter came before Administrative Law Judge David L. Welch ("ALJ") for a hearing in Indianapolis on June 27, 2013. [R. at 399.] The ALJ issued a decision on September 27, 2013, again denying Jacobs's applications for DIB and SSI [R. at 413], and on August 25, 2014 the Appeals Council denied Jacobs's request for review, making the ALJ's decision the final decision for the purposes of judicial review [R. at 382]. Jacobs timely filed his Complaint with this Court on October 24, 2014, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[1] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found within cited court decisions.

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity, identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities.  S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir.

1984)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion."  *Dixon*, 270 F.3d at 1176.

### III.  The ALJ's Decision

In his decision, the ALJ first determined, "in an abundance of caution," that Jacobs did not engage in substantial gainful activity from November 2007 through December 2008.  [R. at 410-02.]  At step two, the ALJ found that Jacobs's "Disorders of the spine; Major dysfunction of a joint (for any cause), left knee; Obesity; and Sleep apnea" are all severe impairments, as defined by the Act.  [R. at 402-04.]  However, at step three the ALJ found that Jacobs does not have an impairment that meets or medically equals a Listing by evaluating the following listed impairments: Listing 1.02 for his left knee dysfunction, Listing 1.04 for his degenerative disc disease, and Listing 3.10 for his sleep apnea.  [R. at 404-05 (noting that there is no longer a Listing for obesity).]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Jacobs has the residual functional capacity (RFC) to perform "medium work" with the following limitations:

> [T]he claimant has the residual functional capacity for lifting up to fifty pounds occasionally and up to twenty-five pounds frequently in medium work as defined by the regulations, with normal breaks.  The claimant can never climb ladders, ropes, or scaffolds.  He can only occasionally stoop or kneel.  Finally, the claimant is precluded from any exposure to unprotected heights.

[R. at 405.]  In making this RFC finding, the ALJ explained that, although Jacobs's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his

4

statements concerning the intensity, persistence, and limiting effects of his pain and other symptoms "are not entirely credible based upon [the ALJ's] review of the entire record, the testimony in the record, and [the ALJ's] longitudinal view of the record." [R. at 406.]

Additionally, the ALJ noted during his RFC assessment that on January 10, 2008 one Dr. Haehl diagnosed Jacobs with "left lumbar radiculopathy secondary to spinal stenosis" and opined that Jacobs "could only stand for one to two hours, walk for one-half-hour, could not push for more than one hour, sit for one to two hours, and bend for two to three hours per day." [R. at 408-09.] However, the ALJ also noted that on June 28, 2008 an electromyography of Jacobs's lower limbs indicated no evidence of low lumbosacral radiculopathy, and on January 25, 2008 an MRI scan of Jacobs's lumbar spine did not indicate any spinal stenosis. [R. at 409.] Thus, the ALJ afforded "little weight to Dr. Haehl's opinion because it is not well supported by medically acceptable clinical findings and laboratory techniques." [*Id.*]

After acknowledging that Jacobs is unable to perform his past relevant work, the ALJ proceeded to step five and found that there are jobs that exist in significant numbers that Jacobs can perform. [R. at 411-12.] Given his, age, education, work experience, and residual functional capacity, the ALJ concluded that Jacobs would still be able to perform the requirements of occupations such as a packager, with 58,700 positions nationally and 1,420 regionally; mail room clerk, with 96,400 nationally and 1,630 regionally; and laundry worker, with 78,500 positions nationally and 1,190 regionally. [*Id.*] Based on these findings, the ALJ concluded that Jacobs is not disabled, as defined by the Social Security Act. [R. at 412.]

### IV.  Discussion

On appeal, Jacobs argues solely that the ALJ erred in his treatment of the opinion of Dr. Haehl. Specifically, Jacobs first argues that the ALJ "arbitrarily rejected Dr. Haehl's

5

evaluation," instead "acting as his own medical expert" in giving great weight to the non-examining, non-treating evidence of the medical advisor instead of giving controlling weight to Dr. Haehl as Jacobs's treating physician. [Dkt. 17 at 16-17.] Jacobs additionally asserts that the ALJ erred in failing to include the functional limitations included in Dr. Haehl's evaluation in the hypothetical questions posed to the vocational expert at the hearing. [*Id.* at 21.]

In determining whether a claimant is disabled, the Commissioner "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b). Generally, so long as the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," the Commissioner will give such an opinion controlling weight. *Id.* at § 404.1527(c)(2). When a treating source is not given controlling weight, the ALJ must "give good reasons" for the weight ultimately given to the opinion of the treating source after applying several enumerated factors to the opinion. *Id.* Examples of such "good reasons" for discounting the medical opinion of a treating source include internal inconsistency and inconsistency with other medical opinions of record. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Additionally, so long as the ALJ "minimally articulates his reasons for crediting or rejecting evidence of disability," the ALJ's decision is supported by substantial evidence.

In his RFC assessment, the ALJ reviewed several records from Dr. Haehl, including Dr. Haehl's report from the January 7, 2008[2] visit. [R. at 408-09.] First, the ALJ reviewed Dr. Haehl's diagnosis of "left lumbar radiculopathy secondary to lumbar anterolisthesis and some

---

[2] Although the ALJ refers to the visit as occurring on January 10, 2008 [R. at 408], the record confirms that the report's Service Date and Date Dictated were January 7, 2008, while the Date Transcribed was January 10, 2008 [R. at 267]. Accordingly, the Court will use the Service Date, January 7, 2008, to describe this medical visit.

6

spinal stenosis" and the subsequent functional limitations reported.  [*Id.*]  The ALJ then wrote that he afforded little weight to Dr. Haehl's report because "it is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques" [R. at 409], which clinical findings and diagnostic techniques are required in order to afford controlling weight to a threating source's opinion, 20 C.F.R. § 404.1527(c)(2).

      The ALJ elaborated on his decision to afford little weight to Dr. Haehl's January 7, 2008 report by citing first to an electromyography dated June 26, 2008,[3] which Jacobs underwent based on Dr. Haehl's referral.  [R. at 409 (citing to R. at 378).]  The electromyography confirmed that "[t]here is no evidence for a peripheral polyneuropathy, peripheral entrapment neuropathy, or **low lumbosacral radiculopathy**" [R. at 378], which evidence is inconsistent with Dr. Haehl's diagnosis of "left lumbar radiculopathy."  [R. at 408-09.]  Additionally, the ALJ cited to the January 25, 2008 MRI scan that did not indicate any spinal stenosis [*see* R. at 303], which scan was performed less than three weeks after Dr. Haehl reported a diagnosis of "spinal stenosis."  [R. at 409.]  Accordingly, because of these inconsistencies with laboratory diagnostic techniques of record, the ALJ concluded that Dr. Haehl's January 7, 2008 report is "inconsistent with other substantial medical evidence of record."  [*Id.*]

      As confirmed by the Seventh Circuit in *Skarbek*, citing inconsistency with other medical evidence of record meets the Act's requirement that "good reasons" be given for discounting the opinion of a treating source.  The ALJ did not, as alleged by Jacobs, substitute his own lay opinion for that of a medical expert but carefully explained why Dr. Haehl's January 7, 2008 report is not an accurate reflection of Jacobs's medical condition from November 2007 through December 2008.  Thus, the ALJ in this matter more than minimally articulated his reasoning for

---

[3] Although the ALJ writes "June 28," there is a smudge in the photo copy of the record, and it appears to the Court that the actual date on the record is the 26th of June and not the 28th.  [R. at 378.]

affording Dr. Haehl's report little weight, as required by the Seventh Circuit. Accordingly substantial evidence supports the ALJ's decision to limit the weight given to the January 7, 2008 opinion of Dr. Haehl.

Lastly, Jacobs asserts that the ALJ's hypothetical questions to the vocational expert failed to account for the limitations expressed in Dr. Haehl's January 7, 2008 report. [Dkt. 17 at 21.] It is clearly established law within the Seventh Circuit that "a hypothetical question to the vocational expert must include all limitations **supported by medical evidence in the record**." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) (emphasis added). While Jacobs asserts that the ALJ failed to give "full consideration to all of [Jacobs's] **documented** impairments" and limitations [Dkt. 17 at 21 (emphasis added)], such is not the requirement set forth by the Seventh Circuit—the impairments must be "supported by medical evidence in the record" in order to be properly accounted for in the hypothetical questions to the vocational expert (VE). Here, Jacobs makes no argument that Dr. Haehl's functional observations are so supported by medical evidence in the record. Instead, as discussed above, the ALJ articulated that Dr. Haehl's report is inconsistent with, and not supported by, medical evidence in the record. Thus, while Jacobs's assertion—that the ALJ's hypothetical questions to the vocational expert failed to account for those limitations reported by Dr. Haehl—is true, such failure does not constitute error in this instance. Accordingly, reversal on the basis of the ALJ's failure to include Dr. Haehl's unsubstantiated limitations would not be proper.

### V. Conclusion

For the aforementioned reasons, substantial evidence supports the ALJ's determination that Jacobs is not disabled, pursuant to the Social Security Act, and the Commissioner's decision should therefore be **AFFIRMED**. Any objections to the Magistrate Judge's Report and

Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 06/18/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov